Mark Eisen (SBN - 289009)
meisen@edelson.com
EDELSON PC
555 West Fifth Street, 31st Floor
Los Angeles, California 90013
Tel: 213.533.4100
Fax: 213.947.4251

Rafey S. Balabanian*
rbalabanian@edelson.com
Benjamin H. Richman*
brichman@edelson.com
Eve-Lynn J. Rapp*
erapp@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Pro hac vice admission to be sought.

Attorneys for Plaintiff and the putative Class

# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRIS HALL, individually and on behalf of all others similarly situated, | Case No. **'14CV1262 JM   JMA** |
| *Plaintiff,* | **CLASS ACTION COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| AD BOOM GROUP, INC., a California corporation, WHOLENUTRA INC., a California corporation, HEALTHIZON, INC., a California corporation, and LEVEL NUTRA, INC., a California corporation, | |
| *Defendants.* | |

Plaintiff Kris Hall ("Hall") brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendants Ad Boom Group, Inc., Wholenutra Inc., Healthizon, Inc., and Level Nutra, Inc. (collectively doing business as "Nutra Health, Inc.") to enjoin their practice of deceptively marketing to and billing consumers—without authorization—for certain of their products and to obtain redress for all persons injured by such conduct. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by his attorneys:

## NATURE OF THE ACTION

1.      Defendants are just a few of a plethora of companies vying for the attention and money of consumers seeking weight loss and workout supplements (*i.e.*, pills marketed as having the ability to facilitate weight loss, muscle growth, etc.).

2.      In an attempt to market and sell such supplements (commonly referred to as "nutraceuticals"), Defendants heavily promote introductory "free trials" through targeted online advertisements, where consumers can supposedly try one bottle of their product for *only* of the cost of shipping and handling.

3.      Unfortunately, Defendants don't clearly or conspicuously disclose that once consumers provide Defendants with their payment information—to purportedly pay for the costs of shipping and handling—Defendants enroll them in a recurring monthly club and then place substantial monthly charges on their accounts without disclosing—in any readily recognizable fashion—that these charges will be imposed.

4.      By and through these practices, Defendants have deceived thousands of consumers throughout the United States. In order to redress these deceptive practices, Plaintiff Kris Hall, on behalf of himself and a class of similarly situated

individuals, brings this suit and seeks, among other things, injunctive relief, damages, and restitution.

## **PARTIES**

5.     Plaintiff Kris Hall is a natural person and citizen of the State of Ohio.

6.     Defendant Ad Boom Group, Inc. is a corporation existing under the laws of the State of California, with its principal place of business located at 750 B Street, Unit 1930, San Diego, California 92101. Defendant Ad Boom Group conducts business throughout this District, the State of California, and the United States.

7.     Defendant Wholenutra Inc. is a corporation existing under the laws of the State of California, with its principal place of business located at 229 16th Street, Suite 227, San Diego, California 92101. Defendant Wholenutra conducts business throughout this District, the State of California, and the United States.

8.     Defendant Healthizon, Inc. is a corporation existing under the laws of the State of California, with its principal place of business located at 877 Island Avenue, Suite 807, San Diego, California 92101. Defendant Healthizon conducts business throughout this District, the State of California, and the United States.

9.     Defendant Level Nutra, Inc. is a corporation existing under the laws of the State of California, with its principal place of business located at 750 B Street, Unit 1930, San Diego, California 92101. Defendant Level Nutra conducts business throughout this District, the State of California, and the United States.

10.     Defendants Wholenutra, Healthizon, and Level Nutra are divisions and/or alter-egos of Defendant Ad Boom Group created to carry out its nutraceutical business. On information and belief, Defendants Ad Boom Group, Wholenutra, Healthizon, and Level Nutra actually conduct business out of the same office, with one management team, and the same employees.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## JURISDICTION AND VENUE

11.    The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), because (a) at least one member of the putative class is a citizen of a state different from Defendants, (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (c) none of the exceptions under that subsection apply to this action. This Court also has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, as the action arises in part under the Electronic Funds Transfer Act, which is a federal statute.

12.    Venue is proper in this District under 28 U.S.C. § 1391(b) as all Defendants reside in this District and the injuries of which Plaintiff complains arose in part in this District. Venue is additionally proper because Defendants conduct significant business transactions in this District, including soliciting consumer business, and entering into consumer and business transactions.

## FACTS COMMON TO ALL COUNTS

**I.      An Overview of Defendants' Deceptive Conduct.**

13.    Defendants own a number of nutraceutical supplement companies that operate under the brand names "Hyper Fuel 9x," "Elevate GF," "Optimal Stack," and "Nitra Cycle."

14.    Unfortunately, and as described more fully below, Defendants engaged (and continue to engage) in a far-reaching scheme to defraud consumers into purchasing their supplements. That is, Defendants work together to deceptively enroll consumers in monthly supplement clubs so that Defendants can impose recurring and sometimes endless monthly charges onto their credit card or bank statements.

15.    Defendants primarily accomplish this fraud by using targeted online advertisements to promote "trial offers," so that consumers can supposedly *try* their products "risk free." Unfortunately, Defendants' trials are nothing more than traps

designed to induce consumers to provide Defendants with their payment information (to pay for a nominal shipping fee), so that Defendants can later load substantial charges on their accounts without permission. Given the complexity of their scheme, a description of their business practices follows.

  A.   *Defendants' and their agents heavily promote Defendants' supplements through targeted online advertisements and affiliate websites.*

16.   Consumers are first exposed to Defendants' products through targeted online advertisements and affiliate websites[1] such as "hyperfuel9xsite.com," "hyperfuel9xtrials.com," "elevategfreviewed.com," and "optimalstack-supplement.com."

17.   While these advertisements and websites appear to be consumer reviews, blogs, and articles recommending Defendants' products, they are actually fabricated advertisements designed to direct consumers to Defendants' websites where consumers are strongly encouraged to sign up for an introductory free trial (*i.e.*, to receive a free bottle of one of Defendants' products). For example, Figure 1 on the following page shows a screenshot of elevategfreviewed.com, which is a website that contains—what appears to be—a lengthy review boasting the purported benefits of taking Defendants' Elevate GF product. Throughout the website, the reader is strongly encouraged to visit one of Defendants' webpages where they can sign up to try their supplements for free. (*See id.*)

---

[1]      In its simplest form, an "affiliate website" or "affiliate marketer" refers to a party that is paid to bring potential customers to another party's business or website.
[2]      The involvement of CPA Ventures is apparent in that each time a consumer clicks on a link in one of the affiliate ads described above (including any link in the

1
2
3
4
5
6
7
8
9
10



11
(**Fig. 1.**)

12
18.    Unfortunately, as previewed above, the review shown in <u>Figure 1</u> is not

13
actually a real review of Defendants' product, rather it's merely an advertisement

14
designed by one of Defendants' affiliate marketers. As such, the advertisement is

15
built on an entirely false and deceptive premise intended to induce consumers to

16
purchase the product believing the consumer review to be true.

17
19.    Possibly the most galling of these affiliate advertisements is the use of

18
fake news articles to promote Defendants' products shown in <u>Figure 2</u> below. As can

19
be seen below, a website located at 6packworkshop.com/muscleboost/us3.php holds

20
itself out as "Muscle & Health Magazine," which, of course, is not real. Beyond that,

21
every single representation made on the website is false. For example, (1) there are

22
no other sections of the website such as "Weight Loss" or "Fit Coach" (click on

23
those directs to Defendants' website; (2) the products have not been seen on Maxim,

24
Playboy, or Men's Health; (3) the "author" of the article is not television actor Joe

25
Manganiello despite a picture to the contrary; (4) the pictured celebrities (e.g., Tom

26
Hardy, Mel Gibson, Hugh Jackman (the photos rotate)) have not used Defendants'

27
product; (5) the "comments" are not real people, but rather total fabrications; and (6)

28

the "author," nor anyone else at the fake magazine, has tried or reviewed Defendants' products.



















**(Fig 2.)**

20.    It's important to note here, that both Defendants and affiliate markets benefit from advertisements like these. That is, Defendants pay affiliate marketers— like elevategfreviewed.com—fees (typically, $32.00) for each customer that they direct to Defendants' websites and who, in turn, purchase one of their products. The intent and effect of this is obvious: affiliate marketers are incentivized to use any and all methods of deception to drive traffic to Defendants' websites, and Defendants are incentivized to facilitate their affiliate partners using those methods to maximize conversions.

21.    Worse yet, Defendants actually play an active role in the design and development of the advertisements described above, inasmuch as all of the affiliate advertisements are run through a network called CPA Ventures,[2] which is operated

---

[2]    The involvement of CPA Ventures is apparent in that each time a consumer clicks on a link in one of the affiliate ads described above (including any link in the fake news story), they will be redirected through CPA Ventures' affiliate tracking

by Defendants. In that capacity, Defendants have direct contact with the affiliates to provide them with promotional materials and offers, and, consistent with industry practice, also provide affiliates with account managers who aid them setting up their ads, assist in revising their marketing materials, provide advice on what representations convert the best, and provide them with materials such graphics, charts, photos, and other intellectual property.

> B.   *Consumers are misled into providing Defendants with their payment information and then enrolled in recurring monthly clubs.*

22.    Once a consumer is directed to any of Defendants websites, they are greeted with virtually identical statements, graphics and claims designed to convince them to sign up for a "free trial" for one of Defendants' supplements.

23.    For instance, each website includes the following statements: "HURRY! CLAIM YOUR TRIAL," "RIPPED 2014 WINNER" and "CLINICALLY PROVEN RESULTS." Likewise, each website claims to be endorsed by companies such as "Muscle & Fitness," "Men's Health," "CNN," and "Maxim"—all without permission—to increase the legitimacy of their products.

24.    Defendants' websites are also riddled with graphic purportedly showing actual "before and after" pictures of consumers who used each of their products. (*See* Figure 3, showing screenshots of "before and after" photos displayed on Defendants' websites.) Note, Defendants' "Hyper Fuel 9x," "Nitra Cycle," and "Elevate GF" websites contain the *exact same* "before and after" pictures. (*See id.*) This simply means that the individual featured in the pictures, and the results displayed, are unrelated to the products being sold. Rather, they are likely stock photos taken from the internet.

---

website (http://affiliate.cpavhits.com) before being redirected to one of Defendants' websites.

1

2

3

4

5

6

7

8

9

10



11      (**Fig. 3.**)

12      25.     Directly next to each of these advertisements and graphics are

13  statements strongly encouraging the visitor to try Defendants' products, such as "Get

14  Ripped Today and Only Pay Shipping" and "WHERE DO WE SEND YOUR RISK

15  FREE TRIAL?"

16      26.     Once a consumer clicks on an advertisement for a free trial, he or she is

17  forwarded to a separate webpage, where they are instructed to provide their name,

18  address, phone and email address. No where on this page is an actual price for the

19  given product, nor is there any request that a consumer review or agree to any terms

20  and conditions.

21      27.     Following submission of the initial contact information, consumers are

22  directed to a checkout page. The checkout pages for all of Defendants' products are

23  nearly identical. (*See* Figure 4 below, showing screenshots of Defendants' checkout

24  pages.) The webpages include representations such as "Congratulations! You qualify

25  for our Reduced Shipping!" (*See id.*) In the upper left column of the webpage is an

26  itemized listing of the products being ordered and the corresponding prices. (*See id.*)

27  Note, Defendants' represent here that the price of the product(s) is "$0.00," but that

28

the consumer will have to pay $7.95 for shipping and handling minus any discounts, which ultimately totals $4.95. (*See id.*) There are no asterisks or other notations next to the total price directing the consumer to review any further terms or otherwise indicating that this isn't the total price to be charged. (*See id.*) Directly below the total is a large bright red arrow encouraging the consumer to "ACTIVATE [THEIR] EXCLUSIVE TRIAL!" and pointing to the credit card form to on the right side of the page. (*See id.*)

28.     At the credit card form, a consumer is asked to input the type of card, the number, expiration date, and a security code. (*See id.*) Immediately below the security code form is a large "SEND ME MY TRIAL" button. (*See id.*) There is no check box and no language that you are agreeing to any terms and conditions or other written agreements. (*See id.*)

29.     On the average size computer screen, the price box, the large arrow and the credit card submit form all fit on the screen without the need to scroll. (*See id.*) As such, there is no reason whatsoever to scroll down below the large red arrow and the "SEND ME MY TRIAL" button. (*See id.*) Because of this, the entire transaction can be completed without needing to scroll or view any other part of the page.

30.     The four screen captures below demonstrate what appears "above the fold" on an average sized monitor:






**(Fig. 4.)**

31.     Within the online marketing industry, the term "above the fold," means that content can be viewed when the webpage loads without the need to scroll. By contrast, the term "below the fold" refers to any content on a website that requires the consumer to scroll down and seek out. Any content that is below the fold, especially when there is no indication above the fold that such content exists, is commonly understood to not be seen by a website viewer.

32.     Defendants intentionally designed the product checkout pages to place any price disclosure below the fold in an area that a consumer would have no reason to view. Specifically, notably below the "price box" and red arrow appears a condensed paragraph of text written in light gray font on a white background in very

small font. In a final effort to discourage any consumer from seeing or reading a price disclosure, this paragraph actually starts with an unrelated disclosure stating "[t]hese statements have not been evaluated by the FDA and are not intended to diagnose, treat, cure, or prevent any disease. Please consult your physician before beginning any program. This product is not intended to diagnose, treat, cure, or prevent any disease."

33.   Only after that sentence, and buried in the middle of the paragraph, is there a mention that failure by a consumer to cancel the trial offer will result in an automatic enrollment in a monthly program that will charge his or her credit card $87.47 every thirty days.

34.   The following screen captures demonstrate what appears "below the fold" on an average sized monitor:

\*                    \*                    \*



(**Fig. 5.**)

35.    As such, and by intentional design, consumers simply do not see the actual price disclosure for Defendants' products and submit credit card information relying on the fact that they will only be paying shipping and handling (and will not be subsequently charged).

36.    By definition, Defendants' disclosures are not clear and conspicuous, and intentionally defy every best practices recommendation and FTC guideline.

37.    For example, each year the FTC releases its ".com Disclosures" that provide guidelines and best practices for online advertising and online transactions.[3] The .com Disclosures set forth several rules that are applicable to Defendants' conduct here, and demonstrate how intentionally deceptive their conduct actually is:

- "If a disclosure provides information that contradicts a material claim, the disclosure will not be sufficient to prevent the ad from being deceptive. In that situation, the claim itself must be modified.";
- "If a disclosure is not seen or comprehended, it will not change the net impression consumers take from the ad and therefore cannot qualify the claim to avoid a misleading impression.";
- "In reviewing their ads, advertisers should adopt the perspective of a reasonable consumer. They also should assume that consumers don't read an entire website or online screen, just as they don't read every word on a printed page. Disclosures should be placed as close as possible to the claim they qualify. Advertisers should keep in mind that having to scroll increases the risk that consumers will miss a disclosure.";
- "In addition, it is important for advertisers to draw attention to the disclosure. Consumers may not be looking for—or expecting to find— disclosures . . . disclosures must be communicated effectively so that consumers are likely to notice and understand them in connection with the representations that the disclosures modify. Simply making the disclosure available somewhere in the ad, where some consumers might find it, does not meet the clear and conspicuous standard.";
- "When advertisers are putting disclosures in a place where consumers might have to scroll in order to view them, they should use text or visual cues to encourage consumers to scroll and avoid formats that discourage

---

[3]    *See* Federal Trade Commission, .com Disclosures: How to Make Effective Disclosures in Digital Advertising (March 2013), *available at* http://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-staff-revises-online-advertising-disclosure-guidelines/130312dotcomdisclosures.pdf.

scrolling . . . An explicit instruction like 'see below for important information on restocking fees' will alert consumers to scroll and look for the information . . . General or vague statements, such as 'details below,' provide no indication about the subject matter or importance of the information that consumers will find and are not adequate cues.";

- "The design of some pages might indicate that there is no more information following and, therefore, no need to continue scrolling. If the text ends before the bottom of the screen or readers see an expanse of blank space, they may stop scrolling and miss the disclosure."

- "They will also likely stop scrolling when they see the information and types of links that normally signify the bottom of a webpage, e.g., 'contact us,' 'terms and conditions,' 'privacy policy,' and 'copyright.' In addition, if there is a lot of unrelated information—either words or graphics— separating a claim and a disclosure, even a consumer who is prompted to scroll might miss the disclosure or not relate it to a distant claim they've already read."; and

- "If scrolling is necessary to view a disclosure, then, ideally, the disclosure should be unavoidable—consumers should not be able to proceed further with a transaction, e.g., click forward, without scrolling through the disclosure. Making a disclosure unavoidable increases the likelihood that consumers will see it."

38.   As made clear when comparing Defendants' conduct with the guidelines set forth by the FTC, it is apparent that Defendants marketing and sales tactics are intentionally deceptive and meant to prevent consumers from understanding the true terms of purchasing Defendants' products.

39.   Perhaps most tellingly, Defendants also sell their products through non-affiliate driven websites that more appropriately follow the guidelines above and disclose the actual charges at issue, require consumers to check a box to agree specific price terms, and places the full charge amount (typically $87.47) directly next to the trial offer language. These websites also disclose the existence of a $1.99 "ShipInsure" charge that is entirely absent from Defendants' other websites. These websites do not receive affiliate traffic and they're difficult, if not impossible, to find through a search engine. As such, they are not Defendants' intended vehicles to actually sell products. Yet, even still, their very existence demonstrates Defendants' knowledge of how to properly disclose a negative option trial. (*See* Figure 6, on the following page, showing a screenshot of one of Defendants' non-affiliate driven

checkout webpages.)

\*                          \*                          \*



(**Fig. 6.**)

## II.    Facts Relating to Plaintiff Kris Hall.

40.     In or around February 2014, Plaintiff Hall encountered an advertisement for Defendants' Hyper Fuel 9x while browsing the World Wide Web. Plaintiff clicked on the advertisement and viewed representations substantially similar to those described above concerning the efficacy, availability, and cost of Hyper Fuel 9x. Based on these representations, Plaintiff submitted his personal

information through Defendants' initial landing page.

41.     Thereafter, Defendants directed Plaintiff to their checkout page. There, Plaintiff viewed the representations substantially similar to those described above, including a "price" box which included $0.00 for the Hyper Fuel 9x and  "Total" of $4.95 for shipping and handling. Plaintiff did not view any other price terms or agree to any terms and conditions.

42.     Based on the representations made by Defendants on their website regarding the total price of $4.95 that would be charged on his debit card, Plaintiff submitted his debit card information and submitted his order.

43.     However, on February 18th, Defendants debited Plaintiff's bank account twice in the amounts of $1.99 and $9.90. The $1.99 debit indicated that it came from "Healthizon" and the $9.90 debit indicated that it was from "Wholenutra."

44.     Plaintiff did not consent or otherwise agree to these charges, and Defendants failed disclose the existence of these charges to Plaintiff in a clear and conspicuous manner. In fact, nowhere on Defendants' Hyper Fuel 9x website is a $1.99 or $9.90 charge ever disclosed in any manner.

45.     Thereafter, on February 28th, Defendants again debited Plaintiff's bank account in the amount $87.47. This debit indicated that it was from "Wholenutra."

46.     Plaintiff did not consent or otherwise agree to these charges, and Defendants failed disclose the existence of these charges to Plaintiff in a clear and conspicuous manner.

47.     On March 20th, Defendants yet again debited Plaintiff's bank account twice in the amounts of $1.99 and $87.47. The $1.99 debit indicated that it came from "Healthizon" and the $87.47 debit indicated that it was from "Wholenutra."

48.     Plaintiff did not consent or otherwise agree to these charges, and Defendants failed disclose the existence of these charges to Plaintiff in a clear and

1   conspicuous manner.

2   49.   Finally, on April 21st Defendants again debited Plaintiff's account in

3   the amounts of $1.99 (Healthizon) and $87.47 (Wholenutra).

4   50.   Plaintiff did not consent or otherwise agree to these charges, and

5   Defendants failed disclose the existence of these charges to Plaintiff in a clear and

6   conspicuous manner.

7   51.   Plaintiff attempted to call Defendants and stop the debits; however, he

8   was only able to reach an automated call line and could not speak with anyone

9   directly about the unauthorized debits.

10   52.   Had Plaintiff known he was going to be automatically charged $1.99

11   and $87.47, he would not have submitted his debit card information to purchase

12   Defendants' product.

13   **CLASS ALLEGATIONS**

14   53.   **Class Definitions**: Plaintiff brings this action pursuant to Federal Rules

15   of Civil Procedure 23(b)(2) and (b)(3) on behalf of himself and a proposed class and

16   subclass defined as follows:

17
18   **Class**: All persons in the United States who (1) submitted payment
     information for Hyper Fuel 9x, Elevate GF, Optimal Stack, or Nitra Cycle; (2)
     through a URL including the notation "AFFID="; and  (3) who were charged
19   monies beyond the listed shipping and handling fee.

20   **EFTA Subclass**:  All persons in the Class who had monies debited from their
     bank account beyond the listed shipping and handling fee.

21   The following persons are excluded from the Class and EFTA Subclass: (1) any

22   Judge or Magistrate presiding over this action and members of their families; (2)

23   Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any

24   entity in which the Defendants or their parents have a controlling interest and their

25   current or former employees, officers and directors; (3) persons who properly

26   execute and file a timely request for exclusion from the Class and EFTA Subclass;

27

28

(4) any person who has had their claims fully and finally adjudicated or otherwise released; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) Plaintiff's counsel and Defendants' counsel.

54.   **Numerosity**:  The exact number of the members of the Class and EFTA Subclass is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. Defendants have deceived and profited from thousands of consumers who fall into the definitions set forth above. Members of the Class and EFTA Subclass can be identified through Defendants' records.

55.   **Commonality**:  There are many questions of law and fact common to the claims of Plaintiff and the Class and EFTA Subclass, and those questions predominate over any questions that may affect individual members of the Class and EFTA Subclass. Common questions for the Class and EFTA Subclass include, but are not limited to the following:

(a)   Whether Defendants' conduct alleged herein constitutes violations of Cal. Bus. & Prof. Code §§ 17500, *et seq*.;

(b)   Whether Defendants' conduct alleged herein constitutes violations of Cal. Civ. Code §§ 1750, *et seq*.;

(c)   Whether Defendants' conduct alleged herein constitutes violations of Cal. Bus. & Prof. Code §§ 17200, *et seq*.;

(d)   Whether Defendants' conduct alleged herein constitutes fraud in the inducement;

(e)   Whether Defendants' conduct alleged herein constitutes fraud by omission;

(f)   Whether Defendants' conduct alleged herein constitutes breach of contract;

(g)   Whether Defendants' conduct alleged herein constitutes unjust enrichment; and

(h)     Whether Defendants' conduct alleged herein constitutes a violation of 15 U.S.C § 1693e.

56.     **Typicality**:  Plaintiff's claims are typical of the claims of other members of the Class and EFTA Subclass, as Plaintiff and other members sustained damages arising out of the wrongful conduct of Defendants, based upon the same transactions that were made uniformly with Plaintiff and the public.

57.     **Adequate Representation**:  Plaintiff will fairly and adequately represent and protect the interests of the Class and EFTA Subclass, and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interest antagonistic to those of the Class and EFTA Subclass, and Defendants have no defenses unique to Plaintiff.

58.     **Policies Generally Applicable to the Class and EFTA Subclass**: This class action is appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class and EFTA Subclass as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and EFTA Subclass, and making final injunctive relief appropriate with respect to the Class and EFTA Subclass as a whole. Defendants' policies challenged herein apply and affect members of the Class and EFTA Subclass uniformly and Plaintiff's challenge of these policies hinges on Defendants' conduct with respect to the Class and EFTA Subclass as a whole, not on facts or law applicable only to Plaintiff. Defendants have acted and failed to act on grounds generally applicable to Plaintiff and the other members of the Class and EFTA Subclass, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and EFTA Subclass. The factual and legal bases of Defendants' liability to Plaintiff and to the other members of the Class and EFTA Subclass are the same, resulting in injury to the Plaintiff and to all of the other members of the Class and

1   EFTA Subclass. Plaintiff and the other members of the Class and EFTA Subclass

2   have suffered similar harm and damages as a result of Defendants' unlawful and

3   wrongful conduct.

4        59.   **Superiority**: This case is also appropriate for class certification because

5   class proceedings are superior to all other available methods for the fair and efficient

6   adjudication of this controversy because joinder of all parties is impracticable. The

7   damages suffered by the individual members of the Class and EFTA Subclass will

8   likely be relatively small, especially given the burden and expense of individual

9   prosecution of the complex litigation necessitated by Defendants' actions. Thus, it

10   would be virtually impossible for the individual members of the Class and EFTA

11   Subclass to obtain effective relief from Defendants' misconduct. Even if members of

12   the Class and EFTA Subclass could sustain such individual litigation, it would still

13   not be preferable to a class action, because individual litigation would increase the

14   delay and expense to all parties due to the complex legal and factual controversies

15   presented in this Complaint. By contrast, a class action presents far fewer

16   management difficulties and provides the benefits of single adjudication, economy

17   of scale, and comprehensive supervision by a single Court. Economies of time,

18   effort and expense will be fostered and uniformity of decisions ensured.

19   

**FIRST CAUSE OF ACTION**
**Violation of California's False Advertising Law**
**Cal. Bus. & Prof. Code §§ 17500,** ***et seq.***
**(On Behalf of Plaintiff and the Class)**

20   

21   

22        60.   Plaintiff incorporates the foregoing allegations as if fully set forth

23   herein.

24        61.   It is unlawful for a corporation to knowingly make, by means of any

25   advertising device or otherwise, any untrue or misleading statement with the intent

26   to sell a product or service, or to induce the public to purchase a product or service.

27   Any statement in advertising that is likely to deceive members of the public

28

constitutes false and misleading advertising under Cal. Bus. & Prof. Code §§ 17500, *et seq.*

62.     As alleged herein, Defendants design, direct, oversee, facilitate and disseminate advertising that they know or should reasonably know is false and misleading because it misrepresents the actual nature and content of their nutraceutical products. This conduct includes, but it is not limited to, promoting and advertising their nutraceutical products and failing to disclose the material sales terms of those products.

63.     Defendants actively misrepresent the price of their nutraceutical products and the amount of and timing of charges to be placed on consumers' bank cards.

64.     Defendants also design, falsely advertise through, and/or have direct knowledge of, the use of fake "consumer reviews" of their nutraceutical products. Although these "reviews" are represented as coming from real-life customers, they are actually created by or through, or in coordination with, Defendants as part of their marketing and advertising scheme. The creators and operators of the fake review websites are in direct contract with and paid for their services by Defendants. These untrue statements induce consumers into purchasing Defendants' nutraceutical products by falsely suggesting that consumers will have an experience similar to the satisfied "consumers" who provide such "reviews." Consumers, however, do not have the same experience as recounted in the fake reviews and are charged in a manner inconsistent with those advertisements.

65.     Additionally, Defendants shares profits with third party "affiliates" who, *en masse*, create fake blogs, videos, and reviews of Defendants' nutraceutical products at Defendants' direction. The fake blogs, videos, and reviews are knowingly created to inundate search engines, such as Google, with false experiences so that any true information is buried when a consumer performs a web

1   search about Defendants' nutraceutical products.

2   66.   By committing the acts alleged in this Complaint, Defendants have

3   disseminated untrue and/or misleading statements through online advertising, and/or

4   have direct knowledge of the falsity of the advertising published on their behalf, in

5   order to sell their nutraceutical products, in violation of the proscriptions of Cal.

6   Bus. & Prof. Code §§ 17500, *et seq*.

7   67.   Plaintiff and members of the Class were all charged monies by

8   Defendants for their nutraceutical products, and they would not have purchased

9   those products had they known the actual price and truth about those products.

10  Accordingly, Plaintiff and members of the Class have suffered injury in fact and lost

11  money as a result of Defendants' acts of false advertising.

12  68.   Plaintiff seeks an order requiring Defendants to (1) immediately cease

13  the unlawful practices stated in this Complaint; (2) make full restitution of all funds

14  wrongfully obtained; and (3) pay interest, attorneys' fees, and costs pursuant to Cal.

15  Code Civ. Proc. § 1021.5.

16  
17                        **SECOND CAUSE OF ACTION**
                     **Violation of the Consumers Legal Remedies Act**
                        **Cal. Civ. Code §§ 1750, *et seq*.**
18                      **(On Behalf of Plaintiff and the Class)**

19  69.   Plaintiff incorporates the foregoing allegations as if fully set forth

20  herein.

21  70.   California's Consumers Legal Remedies Act ("CLRA") prohibits the

22  act, use or employment by any person of any deception, fraud, false pretense, false

23  promise, misrepresentation, concealment, suppression or omission of any material

24  fact with intent that others rely upon such act in connection with the sale or

25  advertisement of any merchandise whether or not any person has in fact been misled,

26  deceived or damaged thereby.

27  71.   As alleged herein, Defendants have engaged in deceptive practices,

28

1   unlawful methods of competition, and/or unfair acts as defined by Cal. Civ. Code §§
2   1750, *et seq.*, to the detriment of Plaintiff and the Class.

3       72.    Defendants utilize false and deceptive advertising that both conceals the
4   actual price of their nutraceutical products and willfully misrepresents testimonial
5   support for those products.

6       73.    Defendants' websites contain unconscionable terms by falsely stating
7   the characteristics and price of their nutraceutical products and are unfair and
8   inequitable in that the material terms of the offers are hidden and actively
9   misrepresented.

10      74.    Defendants intentionally and unlawfully brought harm upon Plaintiff
11  and the Class by inducing Plaintiff and the members of the Class to purchase their
12  nutraceutical products, and thereafter charging them for those products, through the
13  use of deceptive and misleading advertisements that fail to clearly and
14  conspicuously disclose the actual characteristics and price of the products.
15  Specifically, Defendants violated Cal. Civ. Code §§ 1750, *et seq.* in at least the
16  following respects:

17          (a)    In violation of § 1770(a)(2) by using and allowing the use of
18      false testimonials to misrepresent the source, sponsorship, approval, or
19      certification of Defendants' nutraceutical products;

20          (b)    In violation of § 1770(a)(3) by misrepresenting, paying for, and
21      facilitating the affiliation, connection, or association with, or certification by,
22      third party blogs, websites and others in relation to Defendants' nutraceutical
23      products; and

24          (c)    In violation of § 1770(a)(9) by advertising and charging for
25      Defendants' nutraceutical products with the intent not to sell them as
26      advertised.

27      75.    Plaintiff and the Class relied upon Defendants false and deceptive

28

advertising described herein, including fake blogs, fake testimonials, and deceptive landing pages, all of which conceal the actual price of Defendants' nutraceutical products.

76.     The injuries of which Plaintiff and members of the Class complain are a direct and proximate result of Defendants' violations of the law and wrongful conduct described herein.

77.     Under Cal. Civ. Code § 1780(a) and (b), Plaintiff and the Class seek injunctive relief requiring Defendants to cease and desist the illegal conduct alleged in this Complaint, and any other appropriate remedy for violations of the CLRA. For the sake of clarity, Plaintiff explicitly disclaims any claim for damages under the CLRA at this time.

### THIRD CAUSE OF ACTION
#### Violation of California's Unfair Competition Law
#### Cal. Bus. & Prof. §§ 17200, *et seq.*
#### (On Behalf of Plaintiff and the Class)

78.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

79.     California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*, protects both consumers and competitors by promoting fair competition in commercial markets for goods and services.

80.     The UCL prohibits any unlawful, unfair, or fraudulent business act or practice. A business practice need only meet one of the three criteria to be considered unfair competition. An unlawful business practice is anything that can properly be called a business practice and that at the same time is forbidden by law. A fraudulent business practice is one in which members of the public are likely to be deceived.

81.     As alleged herein, Defendants' continued utilization and/or knowledge of unlawful and unconscionable marketing practices constitute unlawful and unfair

1  business practices in violation of Cal. Bus. & Prof. Code §§ 17200, *et seq*.

2     82.   In deceiving Plaintiff and the Class by taking part in the creation,

3  distribution, and dissemination of advertising that misrepresents the benefits and

4  price of Defendants' nutraceutical products, and inducing Plaintiff and members of

5  the Class to proffer payment to Defendants based on those misrepresentations and

6  omissions, Defendants have engaged in deceptive trade practices in violation of Cal.

7  Bus. & Prof. Code §§ 17200, *et seq*.

8     83.   The characteristics of a product or service are material terms of any

9  transaction because they are likely to affect a consumer's choice of, or conduct

10 regarding, whether to purchase a product. Any deception related to characteristics of

11 a consumer product or service is materially misleading.

12    84.   Defendants' misrepresentation the price and characteristics of their

13 nutraceutical products is likely to mislead a reasonable consumer who is acting

14 reasonably under the circumstances.

15    85.   The injury caused by Defendants' conduct is not outweighed by any

16 countervailing benefits to consumers or competition, and the injury is one that

17 consumers themselves could not reasonably have avoided.

18    86.   Defendants have also violated the "fraudulent" prong of the UCL in that

19 Defendants' statements, advertisements, and representations regarding what

20 consumers would receive and for what price for Defendants' nutraceutical products

21 are false and likely to deceive a reasonable consumer. Further, Defendants' acts

22 constitute fraud in the inducement and fraud by omission.

23    87.   Defendants have also violated the "unlawful" prong of the UCL in that

24 their conduct violated the Consumer Legal Remedies Act (Cal. Civ. Code §§ 1750,

25 *et seq*.) and California's False Advertising Law (Cal. Bus. & Prof. Code §§ 17500,

26 *et seq*.).

27    88.   Plaintiff and the Class have suffered harm as a proximate result of

28

Defendants' violations of law and wrongful conduct in the form of monies lost.

89.    Pursuant to Cal. Bus. & Prof. Code §§ 17203, Plaintiff seeks an order requiring Defendants to (1) immediately cease the unlawful practices alleged in this Complaint; (2) make full restitution of all funds wrongfully obtained from Plaintiff and the Class; and (3) pay interest, attorneys' fees, and costs pursuant to Cal. Code Civ. Pro. § 1021.5.

**FOURTH CAUSE OF ACTION**
**Fraud in the Inducement**
**(On Behalf of Plaintiff and the Class)**

90.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

91.    As described with particularity herein, Defendants have designed, overseen, and disseminated false and misleading advertising promoting their nutraceutical products. This conduct includes, but it is not limited to, promoting and advertising their nutraceutical products without disclosing the actual characteristics and price of those products, which are material terms of any transaction. Defendants promoted and charged for their nutraceutical products with full knowledge that consumers were acting in reliance on their false statements.

92.    Through a series of advertisements, representations, omissions, and false statements regarding their nutraceutical products, Defendants misrepresented and obscured the actual cost and characteristics of those products.

93.    Defendants took concrete and intentional steps to misrepresent the actual price and characteristics of their nutraceutical products if consumers submitted their credit card information to Defendants.

94.    Defendants intentionally designed their products' landing and checkout pages so as to increase the rates of conversion (*i.e.*, sales) by misrepresenting the characteristics of their products and intentionally concealing the actual price to be charged for their nutraceutical products.

95.     By committing the acts alleged in this Complaint, Defendants have designed, disseminated untrue and misleading statements through fraudulent advertising in order to sell or induce members of the public to purchase Defendants' nutraceutical products.

96.     The price of the product is a material term of any transaction because it directly affects a consumer's choice of, or conduct regarding, whether to purchase a product. Any deception or fraud related to the price of a consumer product is materially misleading.

97.     The misrepresentation or omission of the contents of a product is likely to mislead a reasonable consumer who is acting reasonably under the circumstances.

98.     Defendants knew of the falsity of the representations it made regarding their nutraceutical products it marketed and charged for.

99.     Defendants intended that the deceptive and fraudulent misrepresentations and omissions it made would induce a consumer to rely and act by submitting their confidential contact and payment information.

100.    Defendants charged and collected from Plaintiff and members of the Class monies without clearly and conspicuously stating the actual price and characteristics of their products. Accordingly, Plaintiff and members of the Class have suffered injury in fact and lost money in justifiable reliance on Defendants' misrepresentations and omissions of material fact.

101.    In deceiving Plaintiff and the Class by creating, enhancing and supporting advertising that fails to clearly and conspicuously disclose, and in fact actively misrepresents, the actual price and characteristics of their nutraceutical products, and inducing Plaintiff and the Class to proffer payment based on those misrepresentations, Defendants' have engaged in fraudulent practices designed to mislead and deceive consumers.

102.    Plaintiff and the Class have suffered harm as a proximate result of

1    Defendants' violations of law and wrongful conduct.

2    103.   Plaintiff, on behalf of himself and the Class, seeks damages for

3    Defendants' unlawful conduct.

4                    **FIFTH CAUSE OF ACTION**
                        **Fraud By Omission**
5               **(On Behalf of Plaintiff and the Class)**

6    104.   Plaintiff incorporates the foregoing allegations as if fully set forth

7    herein.

8    105.   Based on Defendants' misrepresentations and omissions, Plaintiff and

9    the Class reasonably expected that Defendants' nutraceutical products would include

10   certain characteristics and could be obtained through a trial offer for only the price

11   of shipping and handling.

12   106.   At all times, Defendants' knew that the price of their nutraceutical

13   products was not clearly and conspicuously disclosed.

14   107.   Defendants were under a duty to Plaintiff and the Class to disclose the

15   true characteristics and price of their nutraceutical products because:

16           (a)    Defendants were in a superior position to know the true state of

17   facts about the actual price and characteristics of their nutraceutical products;

18           (b)    Plaintiff and the Class members could not reasonably have been

19   expected to learn or discover that Defendants were concealing the actual price

20   of their nutraceutical products; and

21           (c)    Defendants knew that Plaintiff and the Class Members could not

22   reasonably have been expected to learn or discover the actual price of their

23   nutraceutical products.

24   108.   The facts concealed or not disclosed by Defendants to Plaintiff and the

25   Class, and the facts that Defendants knew were concealed, are material in that a

26   reasonable consumer would have considered them to be important in deciding

27

28

---

CLASS ACTION COMPLAINT            29            CASE NO. _____

whether to purchase Defendants' nutraceutical products. Had Plaintiff and the Class known the actual price and characteristics of Defendants' nutraceutical products, they would not have submitted their bank card information.

109. Defendants concealed or failed to disclose the true price and characteristics of the nutraceutical products in order to induce Plaintiff and the Class to act thereon and proffer payment. Plaintiff and the Class justifiably relied on Defendants' omissions to their detriment by paying more money than just a shipping and handling fee.

110. As a direct and proximate result of Defendants' misconduct, Plaintiff and the Class have suffered actual damages in the form of monies paid to purchase Defendants' nutraceutical products.

**SIXTH CAUSE OF ACTION**
**Breach of Contract**
**(On behalf of Plaintiff and the Class)**

111. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

112. In reliance upon Defendants' misrepresentations and deceptive advertising, Plaintiff and Class members entered into contracts with Defendants to receive a trial offer of their nutraceutical products. A material inducement and term of the contracts was Defendants' representation Plaintiff and the Class would only need to pay shipping and handling in order to receive the trial offer.

113. As a result of Defendants' misrepresentations detailed in this Complaint, Plaintiff and the Class were charged fees above and beyond the price of shipping and handling in breach of the consumer retail contract.

114. Defendants' failed to uphold their contractual obligations by charging those additional fees without permission, thereby breaching their contract with Plaintiff and the other members of the Class.

115.   At all times relevant to this action, Defendants acted willfully and with intent to breach contracts entered into with Plaintiff and the Class.

116.   Plaintiff and the Class have fully performed their contractual obligations.

117.   Plaintiff and the Class have suffered damages as a direct result of Defendants' unlawful and wrongful practices described herein in the form of monies paid and lost.

118.   Plaintiff, on his own behalf, and on behalf of the Class, seeks damages for Defendants' breach of contract, as well as interest and attorneys' fees and costs.

**SEVENTH CAUSE OF ACTION**
**Unjust Enrichment**
***(in the alternative to breach of contract)***
**(On behalf of Plaintiff and the Class)**

119.   Plaintiff incorporates the foregoing allegations as if fully set forth herein, excluding paragraphs 109 through 116.

120.   If the Court finds Plaintiff's and the Class's contracts with Defendants invalid or unenforceable, Plaintiff and members of the Class have no valid contractual relationship with Defendants.

121.   Defendants knowingly profited from the charges it placed on and collected from Plaintiff's and Class Members' accounts for their nutraceutical products.

122.   Plaintiff and the Class have conferred a benefit upon Defendants. Defendants have received and retained money belonging to Plaintiff and the Class as a result of their unlawful and deceptive conduct described herein.

123.   Defendants appreciate or have knowledge of the benefit conferred upon it by Plaintiff and the Class.

124.   Under principles of equity and good conscience, Defendants should not be permitted to retain the money belonging to Plaintiff and the Class that they

unjustly received as a result of their unlawful and deceptive conduct described herein.

125.   Plaintiff and the Class have suffered financial loss as a direct result of Defendants unlawful and deceptive conduct described herein.

126.   Plaintiff, on his own behalf and on behalf of the Class, seeks restitution of the proceeds Defendants received as a result of their unlawful and deceptive conduct described herein, as well as attorneys' fees and costs pursuant to Cal. Civ. Proc. Code § 1021.5.

## EIGTH CAUSE OF ACTION
### Violations of the Electronic Funds Transfer Act 15 U.S.C § 1693e
### (On behalf of Plaintiff and the EFTA Subclass as against
### Defendants WholeNutra Inc. and Healthizon, Inc. only)

127.   Plaintiff incorporates the foregoing allegations as if fully set forth herein.

128.   As described above, Defendant Healthizon and WholeNutra initiated the electronic transfers of funds for unauthorized charges from the debit accounts of Plaintiff and the EFTA Subclass without first obtaining written authorization from them or providing them with a copy of any such purported authorization. As such, Defendants Healthizon and WholeNutra have violated 15 U.S.C. § 1693e.

129.   Plaintiff and the members of the EFTA Subclass have suffered damages as a result of Defendants Healthizon's and WholeNutra's violations of 15 U.S.C. § 1693e.

130.   Accordingly, under 15 U.S.C. § 1693m, Plaintiff and the members of the EFTA Subclass seek actual damages, statutory damages, reasonable costs and attorneys' fees, and an injunction against further violations.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Kris Hall, individually and on behalf of the Class and EFTA Subclass, requests that the Court enter an Order providing for the

following relief:

A.     Certify this case as a class action on behalf of the Class and EFTA Subclass defined above, appoint Plaintiff as representative of the Class and EFTA Subclass, and appoint his counsel as Class Counsel;

B.     Declare that Defendants' actions, as set out above, violate Cal. Bus. & Prof. Code §§ 17500 *et seq.*, Cal. Bus. & Prof. Code §§ 17200 *et seq.*, Cal. Civ. Code §§ 1750 *et seq.*, 15 U.S.C § 1693e, and constitute fraud in the inducement, fraud by omission, breach of contract, and unjust enrichment;

C.     Award all economic, monetary, actual, consequential, statutory and compensatory damages caused by Defendants' conduct;

D.     Award restitution against Defendants for all money to which Plaintiff and the Class and EFTA Subclass are entitled in equity;

E.     Award Plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

F.     Award Plaintiff and the Class pre- and post-judgment interest, to the extent allowable;

G.     Enter injunctive and/or declaratory relief as is necessary to protect the interests of Plaintiff and the Class; and

H.     Award such other and further relief as equity and justice may require.

*          *          *

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

Respectfully submitted,

**KRIS HALL**, individually and on behalf of all others similarly situated,

Dated: May 21, 2014

By: _/s/ Mark Eisen_
One of Plaintiff's Attorneys

Mark Eisen (SBN - 289009)
meisen@edelson.com
EDELSON PC
555 West Fifth Street, 31st Floor
Los Angeles, California 90013
Tel: 213.533.4100
Fax: 213.947.4251

Rafey S. Balabanian*
rbalabanian@edelson.com
Benjamin H. Richman*
brichman@edelson.com
Eve-Lynn J. Rapp*
erapp@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Pro hac vice admission to be sought.

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| KRIS HALL | AD BOOM GROUP, INC., WHOLENUTRA INC., HEALTHIZON, INC., and LEVEL NUTRA, INC., |

**(b)** County of Residence of First Listed Plaintiff   Morrow County, Ohio
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Mark Eisen / EDELSON PC / 555 West Fifth Street, 31st Floor, Los Angeles, California 90013 / Tel: 213.533.4100

Attorneys *(If Known)*

'14CV1262 JM   JMA

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*   *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☒ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☒ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 195 Contract Product Liability | | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Cal. Bus. & Prof. Code §§ 17500, et seq., Cal. Civ. Code §§ 1750, et seq, Cal. Bus. & Prof. Code §§ 17200, et seq
Brief description of cause:
Deceptive Marketing    28:1332 - dlg

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ 5,000,000

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE _____ DOCKET NUMBER _____

DATE
5/21/2014

SIGNATURE OF ATTORNEY OF RECORD
/s/ Mark Eisen

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____